# UNITED STATES NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS WASHINGTON, D.C.

**Before**
**K.J. BRUBAKER, A.Y. MARKS, M.N. FULTON**
Appellate Military Judges

**UNITED STATES OF AMERICA**

v.

**QUANTAUS R. RIGGINS**
**STAFF SERGEANT (E-6), U.S. MARINE CORPS**

NMCCA 201400046
GENERAL COURT-MARTIAL

**Sentence Adjudged:** 26 September 2013.
**Military Judge:** LtCol Christopher Greer, USMC.
**Convening Authority:** Commanding General, 2d Marine Logistics Group, Camp Lejeune, NC.
**Staff Judge Advocate's Recommendation:** Maj B.T. Ackison, USMC.
**For Appellant:** Jeffery S. Stephens, Esq.
**For Appellee:** LT Robert Miller, JAGC, USN.

**28 July 2016**



## OPINION OF THE COURT

**THIS OPINION DOES NOT SERVE AS BINDING PRECEDENT, BUT MAY BE CITED AS PERSUASIVE AUTHORITY UNDER NMCCA RULE OF PRACTICE AND PROCEDURE 18.2.**

PER CURIAM:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of one specification of violating a lawful general order (fraternization), making a false official statement, and adultery in violation of Articles 92, 107, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, and 934. The military judge convicted the appellant, contrary to his pleas, of one specification of violating a lawful general order (sexual harassment), five specifications of assault consummated by a battery, and one specification of indecent language, in violation of Articles 92, 128, and 134, UCMJ, 10 U.S.C. §§ 892, 928, and 934. The

convening authority approved the adjudged sentence of three years' confinement, reduction to pay grade E-1, and a bad-conduct discharge.

In our first review of this case, a panel of this Court affirmed the findings and the sentence. *United States v. Riggins*, 2014 CCA LEXIS 864 (N.M.Ct.Crim.App. 26 Nov 2014). Granting review, the United States Court of Appeals for the Armed Forces reversed in part and set aside the findings of guilty to assault consummated by a battery and the sentence. It affirmed the remaining findings of guilty and remanded for reassessment of the sentence or, if necessary, a rehearing on sentence. *United States v. Riggins*, 75 M.J. 78, 85-86 (C.A.A.F. 2016). We reassess the sentence below in accordance with *United States v. Winckelmann*, 73 M.J. 11 (C.A.A.F. 2013).

## FACTUAL BACKGROUND

The appellant, a married Staff Sergeant, and Lance Corporal (LCpl) MS—also married—were originally assigned to the same unit, where the appellant had direct supervisory authority over LCpl MS. In this capacity, the appellant assisted LCpl MS with processing some medical disability paperwork and became aware that she had allegedly violated a physician's order to refrain from consuming alcohol. The appellant was later relieved of his supervisory duties at the unit to allow him to prepare for a deployment, but remained in a position to issue orders to the Marines in the unit and continued to visit members of the unit.

On one such visit, the appellant approached LCpl MS, who was in uniform, from behind, made a humping motion against her and said, "Oh, I just jizzed (sic) on myself."[1] On other visits, the appellant asked about LCpl MS's sex life and requested sexual favors for assisting her with her medical disability paperwork and protecting her from disciplinary action for the alleged drinking violation.

During another visit, the appellant directed LCpl MS to pick up donuts for the unit and stated he needed the previously-mentioned sexual favor. LCpl MS drove in her car to the donut shop and the appellant followed in his truck. The appellant then told LCpl MS to get in his truck. She complied but—concerned he would make further sexual advances—used her cell phone to surreptitiously record their conversation. Indeed, the appellant pressed again for sexual favors, but LCpl MS repeatedly declined. Often tearfully, she again and again expressed appreciation for everything the appellant had done for her, apologized for her unwillingness to grant his requests for sexual favors, and invoked her loyalty to her husband. Despite LCpl MS's clear distress, the appellant persisted, repeatedly assuring her she could trust him, that no one would know about their sexual encounter, and that he would not mistreat her. Despite the intimate nature of their conversation, LCpl MS continued to respond to the appellant, "Yes, Staff Sergeant."

On the appellant's suggestion, LCpl MS went for a drive in his truck, but reiterated that she did not want to have sex with him or perform any sexual favors. The appellant drove to his on-base residence, pulled into his garage, and closed the garage door. The appellant then resumed his requests for sexual favors, and LCpl MS continued to tell him no. He mentioned

---

[1] Record at 199.

that he was running out of time and must return to work. He lowered his voice and said, "I'm begging you." Aware of LCpl MS's discomfort with infidelity, the appellant said he would pretend he was with his wife, and she could close her eyes and pretend she was with her husband. Ultimately, the appellant prevailed and he and LCpl MS engaged in sexual activity, including intercourse.

## ANALYSIS

Courts of Criminal Appeals (CCAs) can, under the right circumstances, "modify sentences 'more expeditiously, more intelligently, and more fairly' than a new court-martial[.]" *Winckelmann*, 73 M.J. at 15 (quoting *Jackson v. Taylor*, 353 U.S. 569, 580 (1957)). This recognizes the "difficulties inherent in sentence rehearings" and that ordering a rehearing—as opposed to the CCA reassessing the sentence itself—"merely substitute[s] one group of nonparticipants in the original trial for another." *Id.* (citation and internal quotation marks omitted). CCAs thus "act with broad discretion when reassessing sentences." *Id.*

Reassessing a sentence is only appropriate if we are able to reliably determine—"with confidence," *United States v. Buber*, 62 M.J. 476, 479 (C.A.A.F. 2006) (citation and internal quotation marks omitted)—that, absent the error, the "'sentence would have been at least of a certain magnitude,'" *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) (quoting *United States v. Jones*, 39 M.J. 315, 317 (C.M.A. 1994)). If we cannot do this, we "must order a rehearing." *Id.*(citation omitted). A reassessed sentence must not only "be purged of prejudicial error[,]" but "also must be 'appropriate' for the offense involved." *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

We base these determinations on the totality of the circumstances of each case, guided by the following "illustrative, but not dispositive, points of analysis":

(1) Whether there has been a dramatic change in the penalty landscape or exposure.

(2) Whether sentencing was by members or a military judge alone. We are more likely to be certain of what sentence a military judge would have imposed as opposed to members.

(3) Whether the nature of the remaining offenses captures the gravamen of criminal conduct included within the original offenses and, similarly, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type with which appellate judges should have the experience and familiarity to reliably determine what sentence would have been imposed at trial.

*Winckelmann*, 73 M.J. at 15-16 (internal citations omitted).

Applying this framework, we find that we are able to reassess the sentence. First, setting aside the assault specifications reduces the maximum period of confinement from 13 years to 10.5. This does not represent a dramatic change to the sentencing landscape. Second,

3

sentencing was by military judge alone, which increases our confidence in what sentence would have been adjudged on the new findings.

It must be acknowledged that excising all offenses alleging assaultive behavior reduces the gravamen of criminal conduct. We thus significantly reduce the period of confinement below. But the remaining offenses still capture much of the harm inherent in a Staff Noncommissioned Officer engaging in such offensive, persistent, and rankly inappropriate behavior. Virtually all of the evidence and aggravating circumstances—in particular the audio recording—remains admissible and relevant to the remaining offenses. The sexual activity and the conversation that preceded it not only evidenced adultery and fraternization, but constituted a particularly egregious case of sexual harassment. Finally, the remaining offenses are of the type with which we have the experience and familiarity to reliably determine what sentence would have been imposed.

CONCLUSION

Accordingly, we affirm only so much of the sentence as provides for 18 months' confinement, reduction to pay grade E-1, and a bad-conduct discharge.

For the Court

R.H. TROIDL
Clerk of Court